IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suenos, LLC, an Illinois limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Diane Goldman, a New Jersey individual, et al.,<br><br>                    Defendants. | Case No. CV 10-01034-TL (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE TIM LEONARD, UNITED STATES DISTRICT JUDGE:

On November 8, 2013, presiding U.S. District Judge Tim Leonard, referred this matter to undersigned,[1] pursuant to 28 U.S.C. §636(b) to conduct a hearing and issue a Report and Recommendation on whether Thomas R. Nolasco, attorney for Defendant Diane Goldman, should be held in contempt for violating the Settlement Conference Order. (Doc. 495, at 3.) On November 25, 2013, this Court held a Show Cause hearing, at which Thomas R. Nolasco (hereinafter "Nolasco") appeared representing himself, and Spencer Marks and Jonathan Rosen appeared representing Plaintiff. (Doc. 502.)

---

[1]Hereinafter "this Court."  For ease of reference, the presiding District Judge will be referred to as "the Court."

**BACKGROUND**

Before trial, on October 29, 2013, this case was referred to this Court for the purpose of conducting a settlement conference. (Doc. 273.) This Court then issued its standard settlement conference order, which read, in pertinent part:

> The purpose of the Settlement Conference is to facilitate settlement of this case, if that is appropriate. It will be conducted in such a manner as not to prejudice any party in the event a settlement is not reached. To that end, the offer and demand, if any, communicated to the undersigned in confidence will be kept confidential and will not be disclosed to any adverse party absent express consent to do so. Rule 408, Federal Rules of Evidence, applies to all aspects of the Settlement Conference. All communications and information exchanged in and during the settlement process, not otherwise discoverable, will not be admissible in evidence for any purpose and shall not be used for any purpose outside the Settlement Conference itself. At the conclusion of the Settlement Conference, all documents submitted and exchanged by the parties shall be returned, destroyed, or otherwise disposed of in the manner directed by the Settlement Judge upon the request of any party.

(Doc. 274, at 1.)

The order also directed the parties to exchange settlement conference memorandums prior to the settlement conference, and that the originals of the memorandums be provided to this Court, but that they NOT be filed with the Clerk of Court. (Doc. 274, at 4.) The order also required that the settlement conference memorandums include each party's position on settlement, "including the amount that the Plaintiff is currently willing to accept and Defendant(s) is/are willing to offer and the history of past settlement discussions, offers and demands." (Id., at 5.)

The settlement conference was held on November 13, 2013, but the case did not settle. (Doc. 275.) Prior to trial, the Court found in favor of Plaintiff on its claim that Defendant Goldman breached the parties' contract, but that neither party was entitled to judgment of law on Defendant Goldman's mitigation defense. (Doc. 248.) The case proceeded to trial, and at its conclusion, the Court granted Plaintiff's motion for judgment as a matter of law against Defendant Lawyers Title on Plaintiff's breach of fiduciary duty claim. (Doc. 412, at 2.) The jury then returned a verdict in favor of Plaintiff on the breach of contract against Defendant Goldman in the amount of zero dollars as direct damages and $327, 946.40 as consequential damages: the jury reduced that amount by $318,515.88 representing its finding as to

Goldman's mitigation of damages defense, leaving the total amount of the damages as $9,430.52. (Doc. 417.) The jury also awarded $85,000.00 against Defendant Lawyers Title in the amount of $85,000.00. (Id. at 2.) On February 5, 2013, judgment was entered in accordance with the Court's findings and the jury verdict. (Doc. 422.)

Shortly after judgment was entered, Defendant Lawyers Title filed a Motion to Prohibit (Plaintiff) from Submitting Evidence or Argument Related to the Parties' Settlement Conference. (Doc. 424.) Lawyers Title sought an order from the Court that Plaintiff be prohibited from including in any of its "anticipated filings" any reference to communications or materials exchanged between the parties in connection with the November 13, 2012, settlement conference. (Id.) Lawyers Title cited this Court's settlement conference order in support of its request. Defendant Goldman did not join in this motion, and Plaintiff never filed a response.

On February 19, 2013, Goldman filed a Motion for Award of Attorney Fees, arguing that Goldman should be considered the prevailing party under the contract, considering the "totality of the litigation" or "percentage of success" of the parties. (Doc. 427, at 3.)

On February 20, 2013, Plaintiff filed a Motion for Attorney Fees Against Diane Goldman, and argued to the contrary, that Plaintiff was the prevailing party even though Plaintiff did not recover the "full measure of relief it request[ed]." (Doc. 432, at 3.) On March 11, 2013, Goldman filed her response to Plaintiff's motion. (Doc. 448.) In her response, she again asserted that she should be considered the prevailing party, because, "[u]nder Arizona law, the prevailing party is the one that has achieved the highest percentage of success with respect to the lawsuit as a whole," citing Schwartz v. Farmers Ins. Co. of Arizona, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App. 1990). (Id., at 1.) Goldman attached a copy of Plaintiff's Settlement Conference Memorandum to establish, in support of her position, that Plaintiff had rejected a settlement offer of $100,000.00, which was over 10

1   times the amount Plaintiff was awarded at trial.[2]

2          Goldman also argued in her response that Plaintiff's request for over $450,000.00 in

3   attorney fees was unreasonable.   She referred to Plaintiff's Settlement Conference

4   Memorandum to establish, in support of her position, that Plaintiff had incurred $267,624.48

5   in attorney fees as of the date of the settlement conference, and projected expending an

6   estimated $13,200-$25,800.00 through trial. (Doc. 448, at 4.)

7          Plaintiff filed a Reply to Goldman's response on April 4, 2013.  In its Reply, Plaintiff

8   did not state an objection to Goldman's reference to, or the filing of their Settlement

9   Conference Memorandum.  (Doc. 459.)

10          On April 5, 2013, Goldman filed a Supplemental Motion for Attorney Fees and Costs,

11   arguing as she did in her response to Plaintiff's motion for attorney fees, that Plaintiff's

12   rejection of Goldman's settlement tender and projection of attorney fee costs at the settlement

13   conference were relevant to the issue of the prevailing party determination and

14   reasonableness of the fees, and again attached a copy of Plaintiff's Settlement Conference

15   Memorandum as an exhibit.[3]  (Doc. 463.)  On April 23, 2013, Plaintiff filed a response to

16   Goldman's motion and supplemental motion for attorney fees, and in that response, again did

17   not state an objection to Goldman's reference to settlement conference communications and

18   the Settlement Conference Memorandum.  (Doc. 468.)  On August 21, 2013, the Court

19   denied Goldman's Motion for Attorney Fees.  (Doc. 479.)

20          During the Show Cause hearing, Nolasco admitted that when he filed his pleadings

21   relating the attorney fee dispute, he did not "go back and read this Court's settlement

22   conference order," and that when he received the Order to Show Cause "it made [him] feel

23   ill and regretful for having done that." (Doc. 509, at 6.)  Nolasco also argued his good faith

24

25

26   [2]The Court ordered the Clerk of Court to strike the exhibit on November 8, 2013. (Doc. 495.)

27

28   [3]The Court did not order this exhibit struck from the docket.  This Court will recommend that the Court do so.

1   belief that Arizona case law and Rule 408, Federal Rules of Evidence, permit reference to

2   settlement negotiations in attorney fee disputes under limited circumstances, and that those

3   limited circumstances applied in this case. (<u>Id.</u>, at 9-11.)  Nolasco also acknowledged that

4   co-defendant Lawyers Title had filed a motion to prohibit Plaintiff from referring to

5   settlement negotiations, but pointed out that the motion was directed toward Plaintiff, and

6   that Plaintiff did not respond to it.  Nolasco asserted that if Plaintiff had objected, he would

7   have "taken action, whatever [he] needed to do, file it under seal, ..." (<u>Id.</u>, at 8.)  Nolasco

8   also asserted that had he gone back and read this Court's settlement conference order, he

9   would have filed a motion for leave to file Plaintiff's Settlement Conference Memorandum,

10  or filed it redacted or under seal. (<u>Id.</u>, at 9.)  Nolasco apologized to the Court. (<u>Id.</u>, at 11.)

11          Plaintiff stated at the hearing that the reason Plaintiff did not respond to the motion

12  by Lawyers Title, was that "it was just obvious that a – under 408 [] you cannot put any of

13  that information before the Court." (Doc. 509, at 13.)  Plaintiff also explained its lack of

14  objection to Goldman's settlement conference references was to avoid giving the reference

15  "any oxygen," believing it to be inappropriate and requiring additional attorney fees to move

16  to strike the reference. (<u>Id.</u>)  Plaintiff portrayed Nolasco's position as one of "asking for

17  forgiveness before asking for permission." (<u>Id.</u>, at 12.)

18          At the conclusion of the Show Cause hearing, this Court ordered briefing by the

19  parties.  Nolasco filed his Brief Concerning Order to Show Cause Why He Should Not be

20  Held in Contempt for Violating Settlement Conference Order on December 2, 2013. (Doc.

21  507.)  Plaintiff filed in Response in Support of Contempt Finding Against Attorney Nolasco

22  on December 12,2013, (Doc. 520), and Nolasco filed a Reply on December 16, 2013. (Doc.

23  527.)

24  \\\

25  \\\

26  \\\

27  \\\

28

1

**LEGAL STANDARD**

2   A party commits civil contempt by disobeying "a specific and definite court order by

3   failure to take all reasonable steps within the party's power to comply." <u>Reno Air Racing</u>

4   <u>Ass'n, Inc. v. McCord</u>, 452 F.3d 1126, 1130 (9th Cir. 2006) (citation omitted).  The contempt

5   "need not be willful, and there is no good faith exception to the requirement of obedience to

6   a court order." <u>In re Dual-Deck Video Cassette Recorder Antitrust Litigation</u>, 10 F.3d 693,

7   695 (9th Cir. 1993) (internal quotes and citation omitted).  If a party's actions are based upon

8   a "good faith and reasonable interpretation of the court's order," then that party should not

9   be held in contempt.  (<u>Id.</u>) (citation omitted).  Contempt must be established by clear and

10  convincing evidence. <u>Wolfard Glassblowing Co. v. Vanbragt</u>, 118 F.3d 1320, 1322 (9th Cir.

11  1997); <u>In re Dual-Deck</u>, 10 F.3d at 695.  "If the purpose of the court's order is to punish past

12  defiance and to vindicate the court's judicial authority, it is a criminal sanction," ... criminal

13  contempt  must be established beyond a reasonable doubt.  <u>Whittaker Corp. v. Execuair</u>

14  <u>Corp.</u>, 953 F.2d 510, 517 (9th Cir. 1992). The purpose of civil contempt sanctions, in

15  contrast, is to "coerce the defendant into compliance with the court's order, and to

16  compensate the complainant for losses sustained." <u>Id.</u> Civil contempt sanctions are "wholly

17  remedial," and a sanction is not a proper civil contempt sanction if it "does not permit [the

18  contemnor] to purge itself of the contempt." <u>Id.</u>

19  In addition to the court's contempt power, Rule 16(f), Fed. R. Civ. P., confers authority

20  upon the court to impose sanctions on a party or attorney for failing to obey a scheduling or

21  other pretrial order.  Local Rule 83.1(f) also provides that the court may, "upon its own

22  initiative" impose appropriate sanctions upon an attorney who, "without just cause" violates

23  or fails to conform to the Federal Rules of Civil Procedure or any order of the court.  The

24  court may, under this Rule, order a sanction that is just under the circumstances, which may

25  include the imposition of a fine, or an order imposing costs and attorney fees.  "District

26  courts have broad discretion in interpreting and applying their local rules." <u>Simmons v.</u>

27  <u>Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010), citing <u>Miranda v. Southern</u>

28  <u>Pacific Transp. Co.</u>, 710 F.2d 516, 521 (9th Cir. 1983).  The court has "inherent power to

1   impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter

2   frivolous filings." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 267 (10th Cir. 1995),

3   citing Chambers v. NASCO Inc., 501 U.S. 32, 50 (1991). "Sanctions are appropriate against

4   a party who violates a court settlement order that the person with settlement authority attend

5   the settlement conference." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1396 (9th Cir.

6   1993).

7                              **APPLICATION OF LAW TO FACTS**

8           This Court's settlement conference order clearly directed the parties not to file

9   settlement conference memoranda with the Clerk of Court. The order also directed that all

10  communications and information exchanged in and during the settlement process not be used

11  for any purpose outside the settlement conference, and that Rule 408, Federal Rules of

12  Evidence, applies to all aspects of the settlement conference. Rule 408 provides that

13  evidence of settlement discussions "is not admissible - on behalf of any party - either to

14  prove or disprove the validity or amount of a disputed claim or to impeach by a prior

15  inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

16          This Court finds that Nolasco violated the terms of the settlement conference order

17  by referencing the settlement offer made by Goldman during the settlement conference, and

18  by attaching to his pleadings Plaintiff's Settlement Conference Memorandum. This Court

19  also finds that Plaintiff was not harmed by this violation. First, Plaintiff did not object,

20  despite having two opportunities to do so, until the Court entered its Order to Show Cause.

21  Plaintiff's explanation that it did not want to draw attention to the inappropriate references,

22  and did not want to incur additional attorney fees by filing a motion to strike is not

23  persuasive. Plaintiff does not explain how additional attention to the references would have

24  caused tangible harm. Second, the attorney fees expended by Plaintiff in electing to weigh

25  in and brief the contempt issue in light of the lack of discernible damages, belies its claim to

26  a financially conservative approach.

27          This Court also finds that Nolasco may reasonably have believed, at the time he

28  violated the terms of the settlement conference order, that his references to prior settlement

1    offers and Plaintiff's projected attorney fees were relevant to his claims that Goldman was

2    the "prevailing party" under Arizona law and that the attorney fees claimed by Plaintiff were

3    unreasonable.  Nolasco argued that the judgment of $9,430.52 that Plaintiff had finally

4    obtained was less than 1% of the damages that Plaintiff originally sought and therefore

5    Goldman should be considered the prevailing party.  (Doc. 448, at 5.)  Nolasco cited

6    Schwartz v. Farmers Ins. Co. Of Arizona, 166 Ariz. 33; 800 P.2d 20 (App. 1990), and Berry

7    v. 352 E. Virginia, L.L.C., 228 Ariz. 9; 261 P.3d 784 (App. 2011), in support of this notion.

8    Nolasco further cited Pioneer Roofing Co. v. Mardian Const. Co., 152 Ariz. 455; 733 P.2d

9    652 (App. 1986), for the proposition that in a Plaintiff's attorney fee claim under A.R.S. §12-

10   341.01 a court may apply a "percentage of success formulation in determining the amount

11   of fees awarded."  (Doc. 448, at 8.)  A review of this authority persuades this Court that

12   Nolasco's argument was not frivolous.

13       Plaintiff derides Nolasco's argument because, as Plaintiff argues, the jury's $9,430.52

14   was not the true judgment, and that the true judgment was entered by the court after adding

15   Plaintiff's attorney fees in the amount of $444,915.49.  (Docs. 504, 505.) This assertion is

16   flawed for two reasons.  The docket entry, titled "JUDGMENT" by the court on February

17   5, 2013, entered just after the jury verdict, reflects that "judgment is entered in favor of

18   plaintiff, Suenos, LLC, and against defendant [Goldman] in the amount of $9,430.52." (Doc.

19   422.)  Thus, Nolasco's "prevailing party" argument utilizing this "judgment" was not, as

20   characterized by Plaintiff, evidence of Nolasco "intentionally ignor[ing] and distort[ing] the

21   difference between the jury verdict and the final judgment to justify his violation of the

22   Settlement Conference Order."  (Doc. 520, at 4.)  In addition, although judgment was later

23   entered by the Court against Goldman in a much larger amount, after the Court granted

24   Plaintiff's motion for attorney fees, that "judgment" was not entered until long after Nolasco

25   advanced his legal argument discussed above.

26       Nolasco argues in his Order to Show Cause brief that there are exceptions to the

27   general proscription, provided by law and Fed. R. Evid. 408, to the use of settlement

28   conference communications outside of the settlement conference, and cites cases he asserts

support the notion that such communications may be relevant in attorney fee disputes. (Doc. 507, at 8-9.) Nolasco cites <u>Ingram v. Oroudjian</u>, for the proposition that the "Ninth Circuit has joined a number of other circuit courts in holding that 'settlement negotiations may be considered by the district court as a factor in determining a fee award.'" 647 F.3d 925, 927 (9th Cir. 2011). This Court finds this irrelevant to the question presented here, as Nolasco did not make this argument in his original pleadings, and acknowledged that in any event, he should have sought permission from the Court before referencing the communications, or at least should have filed the pleadings under seal given this Court's settlement conference order and the general rule against the use of settlement communications in litigation.

In addition, although Nolasco may have reasonably believed his reference to settlement communications in his aforementioned pleadings was appropriate, he does not explain why he attached Plaintiff's entire Settlement Conference Memorandum, which was unnecessary, when only a few lines in the multi-page document were relevant. Furthermore, although Nolasco's argument regarding the propriety of referring to settlement communications in a post-trial fee dispute may not be frivolous, he ignores the fact that attorney fees are often taken into account in settlement negotiations, and the $100,000.00 Goldman may have offered Plaintiff was significantly less what Plaintiff had incurred in legal fees by the time the settlement conference was held, and that Plaintiff ultimately was successful on its claim that Goldman had breached the contract.

This Court finds that Nolasco did not act in bad faith, but was careless and sloppy in violating the terms of this Court's settlement conference order, and in so doing, affected the court's efficient administration of justice. Settlement communications are, as a general rule, sacrosanct. Without the protection provided these communications, the settlement process would be chilled. <u>See</u>, <u>In re Teligent, Inc.</u>, 640 F.3d 53, 57 (2nd Cir. 2011) ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute, and protects the integrity of the process."). For that reason, few exceptions exist to pierce the veil, and Nolasco's lack of

1   reflection in this respect sets a bad precedent.  Although a finding of civil contempt is not

2   appropriate in this case, as the conduct at issue is not continuing, and the facts before this

3   Court do not establish criminal contempt beyond a reasonable doubt, Nolasco's actions in

4   referencing settlement communications, and filing Plaintiff's Settlement Conference

5   Memorandum, without seeking permission from the Court in advance, are worthy of

6   sanctions pursuant to Rule 16(f), Fed. R. Civ. P., and Local Rule 83(f) for his failure to

7   comply with the orders of the Court.

8         For all of the above reasons, this Court recommends that the Court impose the

9   following sanction: Nolasco shall pay a fine of $250.00, out of his own personal funds, by

10   delivering a check in that amount, payable  to the U.S. Clerk of Court, District of Arizona,

11   on or before 10 days after the Court's final order imposing the sanction.  Although the Court

12   could impose significantly more punitive sanctions, it is fair to presume that this sanction will

13   be sufficient to render counsel more diligent in the future in his attention to court orders and

14   the federal rules.

15         **IT IS THEREFORE RECOMMENDED** that Thomas Nolasco pay a fine of

16   $250.00, out of his own personal funds, by delivering a check in that amount, payable  to the

17   U.S. Clerk of Court, District of Arizona, on or before 10 days after the Court's final order

18   imposing the sanction.

19         **IT IS FURTHER RECOMMENDED** that the Court order the Clerk of Court to

20   strike Exhibit B of Defendant Goldman's Supplemental Motion for Attorney Fees.  (Doc.

21   463.)

22         This recommendation is not an order that is immediately appealable to the Ninth

23   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

24   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

25   parties shall have fourteen days from the date of service of a copy of this recommendation

26   within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);

27   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen

28   days within which to file a response to the objections.  Failure timely to file objections to the

1   Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

2   and Recommendation by the district court without further review.  See United States v.

3   Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).

4       DATED this 8th day of January, 2014.

5

6   _____

7       Michelle H. Burns
        United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28